**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **NICOLE C. PETRILA**, | |
| *Plaintiff*, | |
| v. | Civil Action No.: _____ |
| **TEVA PHARMACEUTICALS USA, INC., and TEVA SALES AND MARKETING, INC.** | |
| *Defendant.* | |

**[PROPOSED] AMENDED COMPLAINT**

Plaintiff Nicole Petrila ("Plaintiff") files this First Amended Complaint against Defendant Teva Pharmaceuticals, USA Inc. and Teva Sales and Marketing, Inc. (collectively, "Defendants" or "Teva") on the grounds and in the amount set forth as follows:

**NATURE OF THE ACTION**

1.      This action for declaratory relief, damages, and other appropriate relief is brought pursuant to Title I of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Amendments Act of 2008 ("ADA"), the Texas Commission on Human Rights Act, Tex. Labor Code § 21.051 ("TCHRA") and Texas common law intentional infliction of emotional distress to correct unlawful employment practices on the basis of discrimination and retaliation and to provide appropriate relief to Nicole C. Petrila ("Plaintiff") who was adversely affected by such practices.

2.      More specifically, Plaintiff alleges Teva made unlawful disability-related inquiries that were not business related or consistent with business necessity in violation of Section 102(d)(4)(A) of the ADA, 42 U.S.C. § 12112(d)(4)(A), and then Teva discharged her when she

opposed the aforesaid unlawful practice in violation of Section 503(a) and (b) of the ADA, 42 U.S.C. § 12203(a) and (b).

3.      Plaintiff also brings this action pursuant to the Texas Commission on Human Rights Act, Tex. Labor Code § 211.051 ("TCHRA") and Texas common law intentional infliction of emotional distress.

## JURISDICTION AND VENUE

4.      This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), and therefore, jurisdiction is proper pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and Teva conducts substantial business in this district.

6.      This Court is authorized to grant Plaintiff's prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## THE PARTIES

7.      Plaintiff Nicole C. Petrila ("Plaintiff") is an adult resident of Collin County, Texas and a former Teva employee.

8.      At all times relevant, Teva has continuously been a Delaware corporation doing business in the State of Texas and has continuously employed at least 15 persons.

9.      At all times relevant, Teva has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7).

10. At all times relevant, Teva has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

11. Teva Pharmaceuticals USA, Inc. is corporation organized and existing under the laws of the State of Delaware with its principal place of business in North Wales, Pennsylvania, and Plaintiff's former employer.[1]

12. Teva Sales and Marketing, Inc. is a subsidiary corporation of Teva Pharmaceuticals USA, Inc. and allegedly, Plaintiff's former employer.[2]

13. Teva Pharmaceuitcals USA, Inc. and Teva Sales and Marketing, Inc. shall be referred to hereinafter as ("Defendant" or "Teva").

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. On or about April 21, 2022, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on the basis that Teva discriminated against her on the basis of disability and retaliated against her in satisfaction of 42 U.S.C. § 2000e5(b) and (e).

15. Plaintiff's EEOC charge was filed within 180 days of the last date the unlawful employment practices complained of herein occurred—namely, Plaintiff's termination on or about February 4, 2022.

---

[1] Defendant Teva Pharmaceuticals USA, Inc. ("TUSA") consented to the dismissal of TUSA and allowing Plaintiff to file an Amended Complaint adding Teva Sales and Marketing, Inc. ("TSM") as a Defendant based upon representations that TSM may employ Plaintiff. While the parties have worked amicably thus far throughout the litigation, Plaintiff maintains this action against TUSA because despite consenting to the substitution of parties, TUSA has not proffered any proof or evidence as to the employer-employee relationship between TSM and Plaintiff.

[2] In its Partial Motion to Dismiss and Motion for a More Definitive Statement, Teva alleges that "Plaintiff's actual employer at all times relevant to this action was Teva Sales and Marketing, Inc. ("TSM"), which is a subsidiary corporation of Teva Pharmaceuticals USA, Inc. ("TUSA")." *Id.* at p. 4, fn. 1. "TUSA consents to Plaintiff dismissing TUSA as a party in this action and filing an Amended Complaint naming TSM as the proper party . . .". *Id.*

16.     On or about November 28, 2022 and more than 180 days after Plaintiff filed her Charge, the EEOC issued Plaintiff a Notice of Right to Sue.[3]

17.     Plaintiff files this Complaint on July 21, 2023, which is within ninety (90) days of receiving the EEOC's Notice of Right to Sue and Dismissal and Notice of Rights.

18.     All conditions precedent to the institution of this suit have been fulfilled.

### FACTUAL ALLEGATIONS

19.     For nearly 19 years, Plaintiff worked for Teva where she rose to the rank of Regional Manager. She maintained this title until Teva terminated her employment.

20.     Plaintiff is a disabled person within the meaning of 42 U.S.C. § 12102(1). Plaintiff suffers from antiphospholipid syndrome ("APS"), which is a physical or mental impairment that substantially limits one or more of Plaintiff's major life activities, such as caring for herself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working.

21.     From a medical standpoint, APS is an incurable condition that causes Plaintiff's immune system to mistakenly create antibodies that attack tissues in the body. As a result, these antibodies can cause blood clots to form in arteries and veins.

22.     After suffering a stroke at just 39 years old, Plaintiff sought medical attention and was diagnosed with APS as a result.

23.     At all times relevant, Teva regarded Plaintiff as having such an impairment as defined by 42 U.S.C. §§ 12102(1)(C), 3(A).

24.     At all times relevant, until her termination on or about February 4, 2022, Plaintiff was an employee of Teva.

---

[3] *See* Exhibit 1.

25.    From March 2020 through September 2021, Plaintiff worked for Teva as an Oncology Associate Key Manager. In this capacity, Plaintiff's duties required her to regularly come into in-person contact with numerous Teva employees and third-party medical companies, hospitals, and healthcare workers.

26.    Despite the duties, Teva permitted Plaintiff to work from home even though the

27.    In September 2021, Teva promoted Plaintiff to a Regional Account Manager.

28.    In Plaintiff's capacity as a Regional Account Manager, Plaintiff's duties changed, whereas she began supervising those in the field and conducting in-person visits.

29.    On or about October 22, 2021, Teva told Plaintiff that she was required to become vaccinated against COVID-19 and that Teva would not be offering accommodations of any kind, including medical accommodations.

30.    On or about October 29, 2021, Plaintiff responded to Teva requesting an accommodation to the vaccine mandate due to her APS. Her request was accompanied by a medical diagnosis and physician statement advising that "Ms. Nicole Petrila is not eligible for the Covid-19 vaccine due to the fact that she has an autoimmune disease which she is currently undergoing treatment for and also her risk of bleeding while on anticoagulation [medication]."[4]

31.    In response to Ms. Petrila's accommodation request, Teva required that Plaintiff sign medical release granting access to all her medical records.

32.    Among other things, Teva's releases required that Plaintiff agree to give access to all of her medical records "until [she is] no longer an employee of [Teva]" and "any disclosure of information carries with it the potential for re-disclosure by the recipient and the information may not be protected by federal confidentiality rules."

---

[4] *See* Exhibit 2.

33.     Plaintiff requested that the release be narrowly tailored to encompass only disability-related inquiries that were not job-related and consistent with business necessity and specify an exhaustive list of person(s) or entity(ies) that would see her medical information and family history, but Teva refused to do so.

34.     The scope of the release included medical information regarding Plaintiff's family history involving psychiatric, chemical dependency, suicide, and major medical issues and the release did not designate a single type of medical document *not* included within the scope of authorization Plaintiff would have granted to Teva based on Teva's requirement.

35.     Teva's release was provided to Plaintiff to elicit disability-related information.

36.     Teva's proffered release, was not narrowly tailored to the issue of whether Plaintiff could perform the essential functions of his job or whether he posed a direct threat to the safety of himself or others based on the vague scope of the release, the overbroad scope of the release, the overbroad duration for which the release would be valid, or the provision advising that the information obtained pursuant to the release may be disclosed and/or exempt from federal privacy protections.

37.     Teva's release constitutes an unlawful medical inquiry or authorized unlawful medical inquiries that were not job-related or consistent with business necessity.

38.     Teva's release required the disclosure of family medical history or required authorization of disclosure of Plaintiff's family medical history.

39.     Plaintiff was willing to provide Teva with medical documentation to support her accommodation request—and Plaintiff did provide Teva with such medical documentation—yet nevertheless, Teva insisted that she sign the release.

40.     Plaintiff objected to Teva about the release to the extent that it did not adequately disclose to whom her information would be released, what information would be obtained through the authorization granted by signing the release, and the release was not tailored to address her work at Teva.[5]

41.     Plaintiff told Teva that the release needed to be narrowed in scope because the information sought was sensitive personal information. Plaintiff told Teva that she objected to the extent that the release was not proper in scope and did not identify the proper person—or any person—to whom the information would go, nor did the release identify any limitations on who or to how many persons her medical information would go.

42.     Teva refused to modify the scope of the release to comply with the ADA.

43.     Teva terminated Plaintiff's employment on February 4, 2022, as a direct result of Plaintiff's refusal to sign the release seeking medical information that was not limited to only medical information that was job-related or consistent with business necessity and would likely disclose family medical history.

44.     Teva's acts as described in all the preceding paragraphs were done intentionally.

45.     Teva's acts as described in all the preceding paragraphs were done with malice or with reckless disregard of Plaintiff's federally protected rights as set forth below in Counts I through V.

### COUNT I: UNLAWFUL DISABILITY-RELATED INQUIRIES UNDER THE ADA

46.     Plaintiff incorporates, by reference, all preceding paragraphs as though fully set forth herein.

---

[5] Plaintiff's duties from March 2020 through September 2021 required her to come into contact with others in-person extremely frequently, whereas her duties from September 2021 through her termination in February 2022 required virtually no in-person contact, if any at all.

47.    By and through the release that Teva insisted that Plaintiff sign, Teva made disability-related inquiries to a current employee, sought to make disability-related inquiries to a current employee, or would have made disability-related inquiries that were not limited to medical information that was job-related and consistent with business necessity.

48.    Teva violated Section 102(d)(4)(A) of ADA, 42 U.S.C. § 12112(d)(4)(A) by subjecting Plaintiff to unlawful disability-related inquiries that were not job-related and consistent with business necessity.

49.    Teva violated Section 102(d)(4)(A) of ADA, 42 U.S.C. § 12112(d)(4)(A) by requiring Plaintiff to authorize Teva to conduct disability-related inquiries that were not job-related and consistent with business necessity.

50.     Teva violated Section 102(d)(4)(A) of ADA, 42 U.S.C. § 12112(d)(4)(A) by requiring Plaintiff to provide medical information that was not job-related and consistent with business necessity.

51.    Teva violated Section 102(d)(4)(A) of ADA, 42 U.S.C. § 12112 (d)(4)(A) by terminating Plaintiff directly and proximately because she did not give Teva consent to make disability-related inquiries that were not job-related and consistent with business necessity.

52.    Teva's desire to conduct disability-related inquiries that were not job-related and consistent with business necessity is evidenced by Teva's insistence that Plaintiff sign the release despite already having in its possession medical documentation that demonstrated Plaintiff has a disability and the nature of her disability.

53.    As a direct and proximate result of Defendants' actions or omissions complained of herein, Plaintiff sustained pecuniary and non-economic injuries including, without limitation, loss of wages, the denial of promotional opportunity, loss of benefits, humiliation, embarrassment,

unnecessary pain and suffering, medical expenses, attorneys' fees, and costs associated with this action.

<strong><u>COUNT II: RETALIATORY DISCHARGE<br>IN VIOLATION OF THE ADA</u></strong>

54.     Plaintiff incorporates, by reference, all preceding paragraphs as though fully set forth herein.

55.     Plaintiff's objections to the breadth and clarity of the release were objections to matters made unlawful under the ADA.

56.     Plaintiff's objections were reasonable and made in good faith.

57.     Teva fired Plaintiff as a result of her objections to the release.

58.     Teva violated Section 503(a) of the ADA, 42 U.S.C. § 12203(a), by firing Plaintiff in retaliation for her good faith objection to Teva's disability-related inquires.

59.     As a direct and proximate result of Defendants' actions or omissions complained of herein, Plaintiff sustained pecuniary and non-economic injuries including, without limitation, loss of wages, the denial of promotional opportunity, loss of benefits, humiliation, embarrassment, unnecessary pain and suffering, medical expenses, attorneys' fees, and costs associated with this action.

<strong><u>COUNT III: UNLAWFUL INTERFERENCE AND COERCION<br>IN VIOLATION OF THE ADA</u></strong>

60.     Plaintiff incorporates, by reference, all preceding paragraphs as though fully set forth herein.

61.     The ADA guarantees Plaintiff, as a current employee, the right to be free from medical inquiries that were not job-related and consistent with business necessity.

62.    Teva fired Plaintiff for refusing to sign the release requiring the disclosure of disability-related information that was not job-related or consistent with business necessity.

63.    Teva violated Section 503(b) of the ADA, 42 U.S.C. 12203(b), by interfering, coercing, or intimidating Plaintiff in the exercise of his right to refuse to undergo unlawful disability-related inquiries that were not job-related and consistent with business necessity.

64.    As a direct and proximate result of Defendants' actions or omissions complained of herein, Plaintiff sustained pecuniary and non-economic injuries including, without limitation, loss of wages, the denial of promotional opportunity, loss of benefits, humiliation, embarrassment, unnecessary pain and suffering, medical expenses, attorneys' fees, and costs associated with this action.

### COUNT IV: DISABILITY DISCRIMINATION IN VIOLATION OF THE TCHRA

65.    Plaintiff incorporates, by reference, all preceding paragraphs as though fully set forth herein.

66.    The TCHRA guarantees Plaintiff the right to be free from discrimination in the workplace based on her membership in a protected class, which here, is her disability.

67.    The TCHRA also guarantees Plaintiff the right to be free from medical inquiries that are not job-related and consistent with business necessity.

68.    Teva, as Plaintiff's employer intentionally engaged in unlawful employment practices involving Plaintiff because of her disability.

69.    Teva discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect

Plaintiff's status because of Plaintiff's disability in violation of the Texas Labor Code § 21.051 *et seq*.

70. The Texas Commission on Human Rights Act prohibits employers from discriminating on the basis of inter alia disability. Tex. Labor Code § 211.051.

71. Teva had actual knowledge of Plaintiff's disability based on the medical documentation evidencing Plaintiff's disability and the voluminous conversations in person and via email, concerning Plaintiff's disability.

72. Plaintiff experienced adverse employment action and a materially adverse change in the terms and conditions of her employment – namely, the termination of her employment – because of her disability.

73. At all times relevant, Plaintiff was qualified, is qualified, and remains qualified to perform the essential functions of her job, unvaccinated.

74. At all times relevant, Plaintiff was qualified, is qualified, and remains qualified to perform the essential functions of her job with a reasonable accommodation.

75. Because of Plaintiff's disability, Teva took adverse employment action against her by inter alia refusing to accommodate her and terminating her employment.

76. Providing a reasonable religious accommodation to Plaintiff would not cause Teva to suffer an undue hardship as evidenced by Teva's previous provision of mitigation protocols in lieu of vaccination and the efficacy of such mitigation protocols to achieve the ends sought to be achieved by Teva's mandatory vaccination policy.

77. All allegations set forth herein constitute a discrimination on the basis of religion.

78. All allegations set forth herein constitute a failure to accommodate on the basis of religion.

11

79.     All allegations set forth herein constitute a violation of the TCHRA's prohibition of religious discrimination.

80.     As a direct and proximate result of the aforesaid complained of conduct and violation of the TCHRA, Plaintiff sustained pecuniary and non-economic injuries in an amount that exceeds $500,000, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN VIOLATION OF TEXAS COMMON LAW

81.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

82.     Teva engaged in extreme and outrageous conduct by:

a.  Harassing Plaintiff because of her disability;

b.  Coercing, intimidating, threatening, and otherwise restricting Plaintiff by prohibiting her from returning to work in a manner akin to the conditions imposed upon non-disabled persons;

c.  Refusing to accommodate Plaintiff despite her clearly demonstrated qualifying disability and the inexistence of any undue hardship;

d.  Targeting Plaintiff and firing her because of her disability;

e.  Refusing to allow Plaintiff to obtain a reasonably accommodation for her disability;

f.  Weaponizing knowledge of Plaintiff's disability by seeking to obtain information concerning her family history and medical information about Plaintiff herself despite the fact that the harassment, questions, release, and demand that Plaintiff

grant access to her medical records constitute disability-related inquiries that were not business related or consistent with business necessity;

g. Threatening Plaintiff with disciplinary action, including termination;

h. Taking disciplinary action against Plaintiff because she engaged in constitutionally protected activity, including filing a request for a medical accommodation and for exercising her right to remain free from disability-related inquiries that were not business related or consistent with business necessity; and

i. Terminating Plaintiff.

83. As a direct and proximate result of Defendant's aforesaid intentional or reckless conduct, Plaintiff suffered extreme emotional distress resulting in physical manifestations of symptoms including but not limited to, loss of sleep, weight gain, upset stomach and related abdominal pain, and loss of appetite, sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants Teva Pharmaceuticals USA, Inc. and Teva Sales and Marketing, Inc., (collectively, "Teva") and its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from requiring employees to respond to unlawful disability-related inquiries or requiring employees to disclose genetic information.

13

B.      Grant a permanent injunction enjoining Teva, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from retaliating against employees because of their objections to responding to unlawful disability related inquiries.

C.      Grant a permanent injunction enjoining Teva, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from interfering, coercing or intimidating employees in the enjoyment or exercise of their right to not be required to respond to unlawful disability related inquiries, or to provide genetic information.

D.      Order Teva to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

E.      Order Teva to make whole Plaintiff by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial; reinstatement; front pay in lieu of reinstatement; and other affirmative relief necessary to eradicate the effects of its unlawful employment practices described in the paragraphs above.

F.      Order Teva to make whole Plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above, including medical expenses, and retirement or pension contributions not covered by Defendant's employee benefit plan, in amounts to be determined at trial but in an amount no less than $5,000,000.00.

G.      Order Teva to make whole Plaintiff by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above,

14

including, but not limited to, emotional pain, suffering, inconvenience, and mental anguish resulting from the unlawful practices complained of above, in amounts to be determined at trial.

      H.    Order Teva to pay Plaintiff punitive damages for its malicious and reckless conduct, as described in the paragraphs above, in amounts to be determined at trial.

      I.    Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Dated: July 21, 2023

Respectfully submitted,
NICOLE C. PETRILA

By: /s/ *Michael A. Yoder*
Michael A. Yoder
LAW OFFICE OF MICHAEL A. YODER
2300 Wilson Blvd., Suite 700
Arlington, VA 22201
(571) 234-5594
michael@yoderesq.com

/s/ *J. Daniel Woodall*
J. Daniel Woodall
Attorney in Charge
Tx Bar No. 24008300
SDTX Bar No. 31915
Mobile: 832-724-6351
dan@woodalllawfirm.com

*Counsel for Plaintiffs*

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 21, 2023, a true copy of the foregoing was filed and served via the Court's CM/ECF electronic system upon all parties of record.

/s/ *Michael A. Yoder*
Michael A. Yoder

16